UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

ROBERT PAUL SHARPE                                CASE NO.: 23-00607-5-DMW

    DEBTOR                                              CHAPTER 13

MARK EASTHAM AND PETER SPARK,

                  Plaintiffs,                     ADVERSARY PROCEEDING NO.:

v.

                                  23-00089-5-DMW

PORT CITY CONTRACTING SERVICES,
INC., ROBERT PAUL SHARPE, STONE
BAY TACTICAL, LLC AND SRS SUPPLY,
LLC.

                  Defendants.

### EMERGENCY MOTION TO RECONSIDER AND PROVIDE IMMEDIATE RELIEF

      Robert Sharpe, pro se, pursuant to this Court's 11 U.S.C. § 105 powers, requests reconsideration of ORDER ON MOTION FOR SHOW CAUSE entered the 16th of October 2023.

      1.      Movant, Robert Paul Sharpe, filed a voluntary Petition under Chapter 13 on March 3, 2023, and Joseph A. Bledsoe, III is the duly appointed and serving Trustee. The Chapter 13 Plan remains unconfirmed.

      2.      Movant is a federal whistleblower entitled to protections under 41 U.S.C. § 4712 and 31 U.S.C. 3730(h).

      3.      Mark Eastham and Peter Spark are subjects of Movant's protected fraud disclosures.

4. Mr. Eastham and Mr. Spark have engaged in whistleblower retaliation, including attempts to punish and silence Movant from telling the truth, including Movant's filing of Declaratory Judgement.

5. Moreover, when given an opportunity to establish the truth, under oath, Plaintiffs have refused to answer Movant's complaint for declaratory judgement, further showing the only desire by Plaintiffs is retaliation and silence.

6. Plaintiffs have attempted to have a "gatekeeper" order issued, again with the goal of silencing Movant.

7. Further, the "defamation" order, repeatedly referred to by Plaintiff's counsel, was obtained though perjury of material facts. Among the perjury, Eastham and Spark lied to the court, *ex parte*, about the existence of a North Carolina 50B protective order, obtained at trial, against Mr. Spark.

8. Counsel for Eastham and Spark have been aware of this perjury and other dishonest statements and have not attempted to correct the court record as required by NC Bar ethics.

9. Absent the perjury and whistleblower issues, any order restricting speech, especially rare in civil cases, must survive *strict scrutiny*.

10. Content based orders are presumed unconstitutional:

> Even among First Amendment claims, gag orders warrant a most rigorous form of review because they rest at the intersection of two disfavored forms of expressive limitations: prior restraints and content-based restrictions. Like all "court orders that actually forbid speech activities," *Alexander v. United States*, 509 U.S. 544, 550, 113 S.Ct. 2766, 125 L.Ed.2d 441 (1993)

2

11. "Gag orders should be a last resort, not a first impulse." *In re Murphy-Brown, LLC*, 907 F.3d 788, 800 (4th Cir. 2018)

12. "Strict scrutiny first requires that a gag order serve a "compelling" public interest. See *Reed*, 135 S.Ct. at 2226." *In re Murphy-Brown, LLC*, 907 F.3d 788, 797 (4th Cir. 2018)

13. Public interest is clearly in favor of a whistleblowers ability to tell the truth about corruption.

14. Further, a disabled veteran must have the right to speak up and stop mental abuse and exploitation of a disabled veteran's benefits.

15. Plaintiffs have given no compelling reason for restriction of Movant's content-based speech or how it would harm their ability to receive a fair trial before this Court.

16. *In re Murphy-Brown, LLC*, 907 F.3d 788, 797 (4th Cir. 2018):

> Gag orders inherently target speech relating to pending litigation, a topic right at the core of public and community life. But the "government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft v. ACLU*, 535 U.S. 564, 573, 122 S.Ct. 1700, 152 L.Ed.2d 771 (2002)

17. The order is not narrowly tailored. Even if Plaintiff's had a compelling reason to restrict content-based speech, strict scrutiny also demands that First Amendment restraints be 'narrowly tailored' to serve their intended purpose."

18. *In re Murphy-Brown, LLC*, 907 F.3d 788, 799 (4th Cir. 2018):

> Even when a gag order furthers a compelling interest, it must be the "least restrictive means" of furthering that interest, *Ashcroft*, 542 U.S. at 666. The law empowers trial courts to ensure fair jury trials using a number of tools short of gag orders. These tools include enlarged jury pools, *voir dire*, changes to a trial's location or schedule, cautionary jury instructions, and, in more unusual circumstances, sequestration. The gag order failed to explain if and why these alternatives had proven ineffective. See *Neb. Press*, 427 U.S. at 565, 96 S.Ct. 2791 (holding that "the record [was] lacking in evidence to support" a finding that alternative "measures might not be adequate").

19. Here, the order imposes sweeping and blanket restrictions.

20. Movant has suffered discrimination by the Ch13 trustee, refusal to have a meeting concerning ADA Title II accommodations.

21. After the request for ADA rights, the Ch13 trustee attempted to stop Movant's filing for Declaratory Relief.

22. The Ch13 trustee has taken retaliatory actions against Movant, including changing his position on confirmation of the Ch13 plan.

23. In September, Mr. Bledsoe informed the court our issues were almost settled. After my ADA request and pushback of Mr. Bledsoe's attempts to illegally control my complaint for civil rights, my counsel must now withdraw from my case.

24. Wilson v. Dollar General addresses how a Ch13 debtor owns properly disclosed claims, especially claims for civil rights.

25. This is an engineered conflict, violating whistleblower and disability rights; creating another unnecessary conflict in a system that is supposed to protect me and offer relief.

26. As a disabled veteran suffering from abuse and reporting fraud, Movant should feel safe coming to this Court. Movant should be heard. Protections and rights should be supported.

27. Movant has been left alone, without counsel, without a voice. As a whistleblower, this treatment is the opposite of what should be expected after doing a duty and reporting fraud to the federal government; this is opposed to laws protecting fraud disclosures, criminal witnesses, and victims of abuse.

28. Movant is attempting to receive in patient care for PTSD that has developed during this long campaign of harassment and harm by Plaintiffs. This is an emergency and

Movant's life is on hold, stuck in a horrible place of depression, sadness, and feeling betrayed by the country I faithfully served most of my life.

29. Movant is attempting to get inpatient treatment for PTSD that has developed from the abuse, retaliation, and lack of support.

**Movant requests the following relief:**

1. Recension of the October 16th order restricting speech.

2. Require counsel for Plaintiffs to disclose instances of known perjury of material facts concerning matters before this Court.

3. Require the Ch13 trustee to explain any reason for ignoring my requests for an ADA accommodation and the change in his rhetoric after my request for rights and filing for declaratory judgment.

4. Require the Bankruptcy Administrator to comply with accommodation requests and a meeting under Title II of the ADA.

5. Deny the request for counsel to withdraw due to the conflict with Mr. Bledsoe without an emergency hearing on the matter.

Respectfully submitted this 4th day of December 2023,

Robert Paul Sharpe
245 Royal Fern Road
Wilmington NC 28412
p. (910) 540-8157
wilmingtondiver@gmail.com